## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SUPREME CONTRACTING, INC.,
a New Mexico corporation,

      Plaintiff,

v.                                                            Civ No. __1:20-cv-482_____

PREFERRED CONTRACTORS
INSURANCE COMPANY, RISK
RETENTION GROUP, LLC,
a Montana limited liability company,

      Defendant.

### COMPLAINT FOR BREACH OF NEW MEXICO STATUTORY LAW, COMMON LAW, CONTRACTUAL DUTIES AND DECLARATORY JUDGMENT

      Plaintiff, Supreme Contracting, by and through its counsel of record, SaucedoChavez, P.C. (Christopher T. Saucedo), for its Complaint for Breach of Statutory, Common Law, and Contractual Duties.

### PARTIES AND JURISDICTION

1.      Plaintiff Supreme Contracting, Inc. (hereinafter "Supreme") is a New Mexico corporation having its principal place of business in Bernalillo County, New Mexico.

2.      Upon information and belief, Defendant Preferred Contractors Insurance Company, RRG (hereinafter "Preferred") is a foreign insurance company domiciled in Montana and conducting business in the State of New Mexico.

3.      The amount in controversy is over $75,000.

4.      This Court has jurisdiction over the parties and the subject matter of this lawsuit, and venue is proper.

## BACKGROUND

5.      In January 2009, Supreme was subcontracted by general contractor, Franken Construction Company (hereinafter "Franken"), to perform roofing on a county commissioned structure in Mora County, New Mexico.

6.      The structure was intended to house administrative offices, the Magistrate Court and District Courts in Mora County.

7.      The complex's construction was executed in several phases.

8.      The first phase of construction included the finish of the building's structural shell.

9.      Supreme began working on the structure's roof on January 1, 2010 and completed the roof on November 15, 2010.

10.     In 2014 and 2015, Mora County hired Chavez-Grieves Consulting Engineers, Inc. ("Chavez-Grieves") to inspect the complex for structural, architectural, and engineering soundness.

11.     Chavez-Grieves identified several possible design errors and construction deficiencies. [Ex. 1].

12.     Some of these errors and deficiencies included: the roof insulation board was off-set and there was telegraphing through the roof membrane; roof drain piping from the first to second floor was not align; roof drains adjacent to the building were contributing to moisture and erosion to the subgrade soils and foundation, among other defects all of which partially comprise Mora County's construction defect claim. [Ex. 1 pp. 15, 20, 23].

13.     As such, Mora County expended millions in remedial construction.

14.     On December 13, 2017, Mora County filed a complaint against Franken as well as several other defendants in the Fourth Judicial District Court of New Mexico, (D-430-CV-2017-00098). [Ex. 2].

15.     In turn, Franken filed a Third Amended Third-Party Complaint against its subcontractors from the Mora County project on July 24, 2018 (hereinafter the "Franken Complaint"). [Ex. 3].

16.     Franken, against Supreme, claimed breach of contract, contractual indemnity, common law indemnity, proportional indemnity, contribution, breach of express warranty, breach of implied warranty, and negligence. [Ex. 3].

<strong>GENERAL ALLEGATIONS AGAINST<br>DEFENDANT PREFERRED</strong>

17.     From April 5, 2010 to April 5, 2011, Supreme was insured by Preferred under a general liability policy, (hereinafter the "Policy"), Policy No. PC74892. [Ex. 4].

18.     Supreme and Preferred had a general liability insurance policy at all material times relevant to the facts alleged in the Franken Complaint.

19.     Supreme's premiums for the policy were properly paid to Preferred, and insurance coverage was validly in force at all material times.

20.     Supreme filed an insurance claim (Claim No. PR008644) with Preferred regarding the Franken Complaint.

21.     On August 21, 2018, Golden State Adjusters, a third-party claims administrator authorized to respond to claims on behalf of Preferred (hereinafter "Golden State"), denied Supreme's claim and notified Supreme it would not provide coverage for the claim pursuant to Preferred's policy provisions and exclusions. [Ex. 5].

22.    Specifically, Golden State concluded that Supreme's general liability policy did not provide coverage because the facts alleged under the Franken Complaint did not conform to the policy's definition of "occurrence," "property damage," or "bodily injury." [Ex. 5, p. 2].

23.    Nor did the policy provide coverage for the insured's work or work product. [Ex. 5, p. 2].

24.    Nor did the policy provide coverage for property damage unless it first manifests and appears during the policy term. [Ex. 5, p. 2].

25.    Nor did the policy provide coverage for "products-completed operations hazard." [Ex. 5, p. 2].

26.    The Policy of general liability insurance (Exhibit 4) provided that Preferred would:

1.    INSURING AGREEMENT

1(a).    [Preferred] will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies. [Preferred] will have the right and duty to defend the insured against any suit seeking those damages. However, [Preferred] will not have a duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply…

1(b).    This insurance applies to bodily injury or property damage if: (1) the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; (2) The bodily injury or property damage occurs during the policy period; and (3) Prior to the policy period, no insured…and no employee authorized by you to give or receive notice of an occurrence or claim knew that the bodily injury or property damage had occurred, in whole or in part…

1(c).    bodily injury or property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred…includes any continuation, change or resumption of the bodily injury or property damage after the end of the policy period.

ENDORSEMENT TO POLICY NO. 02

Section I – Coverages – Coverages A Bodily Injury and Property Damage Liability (1)(b)(2)…is hereby deleted and replaced by: The bodily injury or property damage first manifests and appears during the Term. This coverage does not apply to any bodily injury or property damage that is continuous in nature, progressively deteriorating, results from repeated exposure to the same causal agent, and/or that first manifests prior to the

Inception Date, even if such bodily injury or property damage continues into the Term, and whether or not it is known to any insured.

2.       EXCLUSIONS

2(j).     Damage to Property – Property damage to: (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; (20 Premises you sell, give away, or abandon, if the – property damages arises out of any part of those premises; (3) Property loaned to you; (4) Personal property in the care, custody, or control of the insured; (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the – property damage arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because – your work was incorrectly performed on it…Paragraph (6) of this exclusion does not apply to – property damage included in the – products-completed operations hazard.

2(k).     Damage To Your Product – Property damage to – your work arising out of it or any part of it.

2(l).     Damage To Your Work – Property damage to – your work arising out of it or any part of it and included in the – products completed operations hazard…

2(m).   Damage To Impaired Property Or Property Not Physically Injured – Property damage to – impaired property or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in – your product or – your work…This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to – your product or – your work after it has been put to its intended use.

SECTION V   DEFINITIONS

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it…

27.     In September 2019, Supreme's private counsel, SaucedoChavez, P.C., contacted Golden

State in an attempt to advise Golden State that they had a duty to defend Supreme in the Franken

Complaint because it was indeed possible that Supreme's claim fell within the definition of "occurrence" in the Preferred Policy. [Ex. 6 p. 2].

28.    Supreme's counsel also advised Golden State that their refusal to tender a defense was made in bad faith without first conducting an investigation to discover any facts that may implicate its duty to defend. [Ex. 6 p. 2].

29.    SIS Wholesale Insurance Services (hereinafter "SIS"), the insurance program manager for Preferred, responded to Supreme's letter in October 2019. [Ex. 7].

30.    SIS disregarded whether the facts alleged against Supreme fell within the definition of "occurrence," and instead, asserted that Preferred did not have a duty to provide coverage because the only damage alleged was that the "roof insulation board [was] off-set and telegraphing through the roof membrane, [and] because the entire roof is Supreme's work, there is no coverage under the policy." [Ex. 7 p. 2].

31.    In its denial to defend, SIS specifically relied upon the policy provision that provided that property damage to the insured's work arising from the insured's work was excluded from coverage. [Ex. 7 p. 2].

32.    SIS and Golden State both rejected to consider Paragraph 14 of the Franken Complaint which stated that specific roof defects and among other alleged defects comprise Mora County's construction defect claim.

33.    SIS and Golden State failed to conduct an investigation into the facts and circumstances underlying the Franken Complaint and the allegations set forth in Paragraph 14, as neither agent cited to the Chavez-Grieves Report which tends to show how the roofing defects may have caused property damage to the Mora County complex. [Ex. 1, p. 23].

34.     Preferred and its agents, SIS and Golden State, had a duty to investigate the facts underlying the Franken Complaint, act in good faith, uphold the obligations of its insurance policy, defend Supreme in the Franken Complaint and pay sums Supreme became legally obligated to pay.

35.     Preferred and its agents, SIS and Golden State, chose to wrongfully withhold benefits from Supreme that was owed under the Policy.

36.     The reasons listed to withhold benefits from Supreme were frivolous and unfounded, and Preferred acted unreasonably in failing to defend the claim.

37.     This withholding of benefits is illegal and unreasonable pursuant to New Mexico statutes and common law.

## COUNT I
## DECLARATORY JUDGMENT

38.     Plaintiff incorporates by reference all allegations contained in the paragraphs set forth above.

39.     An actual and present controversy has arisen and now exists between Preferred and Supreme concerning their respective rights and obligations under the Policy with respect to the Franken Complaint. Preferred contends it has no duty to defend Supreme in the Franken Complaint under the Policy for the following reasons:

     a.     The facts alleged under the Franken Complaint did not conform to the policy's definition of "occurrence," "property damage," or "bodily injury." [Ex. 5, p. 2].

     b.     The facts alleged under the Franken Complaint solely refer to property damage to the insured's work arising from the insured's work which was excluded from coverage. [Ex. 7 p. 2].

c.     The policy does not provide coverage for property damage unless it first manifests and appears during the policy term. [Ex. 5, p. 2].

40.     Supreme is informed and believes, and on that basis alleges, that Preferred contends that it does not owe a duty to defend Supreme in the Franken Complaint.

41.     Supreme seeks a judicial declaration, pursuant to NMSA 1978 § 44-6-2 of the respective rights and duties of the parties under the Policy and, specifically, that Preferred has a duty to defend or indemnify Supreme in the Franken Complaint.

**COUNT II**
**BREACH OF CONTRACT AND BREACH OF**
**COVENANT OF GOOD FAITH AND FAIR DEALING**

42.     Plaintiff incorporates by reference all allegations contained in the paragraphs set forth above.

43.     Preferred had contractual duties to fairly and fully investigate and evaluate Supreme's claim under the Policy before issuing a denial of coverage.

44.     Preferred had contractual duties to defend Supreme in any lawsuit seeking damages as provided for in the Policy.

45.     Implied in every contract is the covenant of good faith and fair dealing.

46.     Preferred breached its contractual duties and covenant of good faith and fair dealing with Supreme by failing to fully investigate Supreme's claim when it failed to investigate the Mora County Complaint or Chavez-Grieves Report.

47.     Preferred breached its contractual duties to defend Supreme and its covenant of good faith and fair dealing when it issued a denial of coverage to Supreme regarding the Franken Complaint.

48.     Preferred wrongfully and intentionally used the insurance policy to the detriment of Supreme by denying Supreme the benefits of the Policy despite that Supreme's claim was properly made pursuant to the Policy at all material times.

49.     Preferred breached its covenant of good faith and fair dealing by denying Supreme's claim in bad faith.

50.     Preferred's breach of contract and breach of covenant of good faith and fair dealing caused Supreme to sustain damages, in addition to the damages common to all counts of this Complaint, including but not limited to actual damages incurred, the cost of prosecution of this lawsuit, attorney fees, and interest on the sum owed under the Policy. These damages are ongoing and expected to continue in the future.

51.     Preferred's conduct was willful, malicious, wanton, fraudulent, in bad faith, in dishonest judgment, or in reckless disregard of Supreme's rights, thus entitling Supreme to punitive damages.

## COUNT III
## BAD FAITH

52.     Plaintiff incorporates by reference all allegations contained in the paragraphs set forth above.

53.     Preferred had a duty to act reasonably under the circumstances and to conduct a fair and timely investigation and evaluation of Supreme's claim under the Policy.

54.     Preferred breached that duty by denying Supreme's claim for frivolous or unfounded reasons.

55.     Preferred's denial of Supreme's claim was frivolous or unfounded because it denied Supreme coverage by reasoning the claim did not fit into the definition of "occurrence" without reasonably investigating the factual allegations made against Supreme.

56.     Preferred's denial of Supreme's claim was frivolous or unfounded because it denied Supreme coverage by reasoning the Policy was not in effect at the time the damage occurred, but indeed, the Preferred Policy was in effect at all material times.

57.     Preferred's denial of Supreme's claim was frivolous or unfounded because it denied Supreme coverage by reasoning the only allegations made against Supreme involved property damage to Supreme's own work which was excluded by the Policy, but indeed, there are other material factual allegations made against Supreme in the Franken Complaint and in the Chavez-Grieves Report that tend to show the occurrence came within the coverage of the Policy.

58.     Preferred's denial of coverage was frivolous or unfounded and made in bad faith.

59.     Preferred's bad faith caused Supreme to sustain damages, in addition to the damages common to all counts of this Complaint, including but not limited to actual damages incurred, the cost of prosecution of this lawsuit, attorney's fees, and interest on the sum owed under the policy. These damages are ongoing and expected to continue in the future.

60.     Preferred's actions or omissions were intentional, malicious, wanton, and willful or in reckless disregard of Supreme's contractual rights thereby entitling Supreme to an award of punitive damages.

## COUNT IV
## VIOLATION OF THE NEW MEXICO TRADE PRACTICES
## AND FRAUDS ACT INSURANCE CODE

61.     Plaintiff incorporates by reference all allegations contained in the paragraphs set forth above.

62.     There was, at all material times, a State statute commonly known in the Insurance Code as the New Mexico Trade Practices and Frauds Act ("TPFA"), NMSA 1978, Sections 59A-16-1 through 59A-16-30 (1984, as amended).

70.     Supreme was insured under the Policy issued and adjusted by Preferred at all material times.

71.     Preferred owed Supreme the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

72.     In the sale and provision of insurance, and in the handling of general liability claims, Preferred failed to exercise good faith, unreasonably delayed legal representation, and failed to give the interests of Supreme the same consideration it gave its own interests.

73.     Preferred's failure to defend Supreme under its general liability policy was unfounded, unreasonable, and in bad faith.

74.     Preferred misrepresented the terms of the policy it sold to Supreme, or Preferred failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; and failed to follow Preferred's own customary practices and procedures.

75.     Preferred's acts and failures to act were in reckless disregard of Supreme's rights as an insured under the subject policy.

76.     Preferred's acts and practices took advantage of the lack of knowledge and experience of Supreme to a grossly unfair degree.

77.     Preferred failed to abide by its statutory duties under the New Mexico Unfair Claims Practices Act, NMSA Section 59A-16-1, et seq, and such violations are negligence per se.

78.     Preferred misrepresented to Supreme, pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA § 59A-16-20(A).

79.    Preferred failed to acknowledge and act reasonably and promptly upon communications with respect to claims from Supreme arising under the policy, in violation of NMSA § 59A-16-20(B).

80.    Preferred failed to adopt and implement reasonable standards for the prompt investigation and processing of Supreme's claims arising under the policy, in violation of NMSA § 59A-16-20(C).

81.    Preferred failed to properly affirm and defend Supreme or pay for coverage of Supreme's claims within a reasonable period of time after proof of legal liability under the policy was completed and submitted by Supreme, in violation of NMSA 1978 § 59A-16-20(D).

82.    Preferred did not attempt in good faith to effectuate prompt, fair, and equitable settlement of Supreme's claim in which liability has become reasonably clear, in violation of NMSA 1978 § 59A-16-20(E).

83.    Preferred's unreasonable denial of policy coverage compelled Supreme to institute litigation in order to recover the financial losses it incurred and continues to incur while retaining private counsel to defend Supreme in the Franken Complaint despite Supreme's reasonable claim for legal liability coverage under the Policy, in violation of NMSA § 59A-16-20(G).

84.    Preferred failed to promptly provide Supreme with a reasonable explanation of the basis relied upon in the policy in relation to the facts and the applicable law for denial of its claims, in violation of NMSA 1978 § 58-16-20(N).

85.    Preferred's failure to act in good faith and Preferred's violations of the Insurance Code and Trade Practices Act are proximate causes of Supreme's damages.

86.    Preferred's conduct was willful, malicious, wanton, fraudulent, in bad faith, in dishonest judgment, or in reckless disregard of Supreme's right, thus entitling Supreme to punitive damages.

87.    Supreme is entitled to attorney's fees and costs pursuant to Section 59A-16-30 and Section 39-2-1. As a direct and proximate result of Preferred's acts, omissions, policies, and conduct in violating the New Mexico Trade Practices and Fraud Act, and the New Mexico Insurance Code, as set forth above, Supreme has sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to actual damages incurred, the cost of prosecution of this lawsuit, attorney's fees, and interest on the sum owed under the policy. These damages are ongoing and expected to continue in the future.

**COUNT V**
**VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT**

88.    Plaintiff incorporates by reference all allegations contained in the paragraphs set forth above.

89.    There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act ("UPA"), NMSA 1978, Sections 57-12-1 to 57-12-22 (1967, as amended), including but not limited to those subsections in Sections 57-12-2(D)(7), (D)(14), (D)(15), D(17) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practice Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
> > (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
> >
> > (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15) stating that a transaction involves rights, remedies or obligations that it does not involve;

(17) failure to deliver the quality or quantity of goods or services contracted for;

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts that to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

90.    Preferred used ambiguity as to material facts when it unreasonably concluded the Policy did not cover Supreme under the Franken Complaint which deceived or tended to deceive Supreme into believing it was not entitled to insurance coverage regarding the Franken Complaint.

91.    Preferred stated that general liability insurance policy would cover property damage for which Supreme was liable and subsequently asserted the policy did not apply.

92.    Preferred failed to deliver the quality or quantity of services applied for and purchased for by denying coverage and failing to defend Supreme in the Franken Complaint.

93.    Preferred took advantage of the lack of knowledge, ability, experience or capacity of Supreme to a grossly unfair degree.

94.    There is a gross disparity between the value received by Supreme and the price Supreme paid for the general liability insurance because although Supreme paid required premiums it did not receive the benefit of the policy when Preferred denied coverage of Supreme's claim.

95.    Preferred, as set forth above, knowingly and willfully engaged in unfair practices prohibited under Section 57-12-3, including but not limited to those subsections in Sections 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12-2(E).

96.     Preferred's conduct was willful, malicious, wanton, fraudulent, in bad faith, in dishonest judgment, or in reckless disregard of Supreme's right, thus entitling Supreme to punitive damages and to treble damages pursuant to NMSA 1978 § 57-12-10(B).

97.     Supreme has sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to actual damages incurred, the cost of prosecution of this lawsuit, attorney's fees, and interest on the sum owed under the policy. These damages are ongoing and expected to continue in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant and that the Court issue an order granting the following relief:

    A.    For a declaration that Preferred has a duty to defend or indemnify Supreme in connection with the claims asserted in the Franken Complaint;

    B.    Recovery of a reasonable monetary award or awards as compensatory damages, in amounts and to the extent to be proven at trial;

    B.    Prejudgment and post-judgement interest thereon at the rate determined by law;

    C.    Plaintiff's costs in the action;

    D.    Attorney fees;

    E.    Punitive damages;

    F.    Treble damages; and

    G.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**SAUCEDOCHAVEZ, P.C.**

By:      /s/ Christopher T. Saucedo
Christopher T. Saucedo
800 Lomas Blvd. NW, Suite 200
Tel: (505) 338-3945
Email: csaucedo@saucedochavez.com